In re John A. TARAS, Joanne Taras, Debtors.

John A. TARAS, Joanne Taras, Plaintiffs,

v.

COMMONWEALTH MORTGAGE CORP. OF AMERICA, Defendant.

Bankruptcy No. 91–13110S.

Adv. No. 91–0880S.

United States Bankruptcy Court, E.D. Pennsylvania.

Feb. 12, 1992.

John T. Tolbert, Chester, Pa., for debtors.

Leslie J. Carson, Philadelphia, Pa., for Commonwealth Mortg. Corp. of America.

Edward Sparkman, Philadelphia, Pa., Trustee.

## OPINION

DAVID A. SCHOLL, Bankruptcy Judge.

### A. INTRODUCTION

The instant proceeding causes us to consider, principally, the concepts of *res judicata* and *stare decisis* in the context of whether the recent decisions of the United States Supreme Court in *Dewsnup v. Timm*, — U.S. ——, 112 S.Ct. 773, 116 L.Ed.2d 903, 22 B.C.D. 750 (1992), and of the Third Circuit Court of Appeals ("the Third Circuit") in *First Nat'l Fidelity Corp. v. Perry*, 945 F.2d 61 (3d Cir.1991), justify our declining to continue to follow the decision of the Third Circuit in *Wilson v. Commonwealth Mortgage Corporation*, 895 F.2d 123 (3d Cir.1990). We conclude that *Wilson* has survived *Dewsnup* and *Perry*, and that therefore the *stare decisis* effect of *Wilson* and the *res judicata* effect of a virtually-identical prior proceeding involving the same parties in a prior bankruptcy case require us to enter a judgment fixing the secured portion of the claim of COMMONWEALTH MORTGAGE CORP. OF AMERICA ("the Mortgagee") against JOHN A. TARAS and JOANNE TARAS ("the Debtors") at $17,500.

We also hold that the broad power of the Debtors to modify their Chapter 13 plan prior to confirmation allows the Debtors to "abate" several delinquent payments and propose a new, apparently-confirmable plan. We will therefore enter a judgment in favor of the Debtors as prayed for in the adversary proceeding before us; grant the Debtors' abatement motion; overrule the articulated Objections of the Mortgagee to their amended plan; and deny the Mort-

gagee's motion for relief from the automatic stay.

## B. PROCEDURAL AND FACTUAL HISTORY

The Debtors filed the instant joint Chapter 13 bankruptcy case on June 4, 1991. This case had been preceded by a prior case of the Debtors, also initially filed as a joint Chapter 13 case, Bankr. No. 90–10651S, on February 13, 1990 ("the 1990 Case"). In the course of the 1990 Case, the Debtors filed, on June 12, 1990, an adversary proceeding, Adv. No. 90–0467S ("the 1990 Proceeding"), which is the mirror image of that presently before us. The 1990 Proceeding, like the proceeding now before us, requested that we bifurcate the Mortgagee's filed claim into a secured claim to the extent of the value of the Debtors' residential realty at 1108 Clover Lane, Chester, Pennsylvania 19013 ("the Premises"), and an unsecured claim for the balance of the claim, pursuant to 11 U.S.C. § 506(a).

On July 27, 1990, we entered a judgment in favor of the Debtors in the 1990 Proceeding, fixing the Mortgagee's allowed secured claim at $17,500, the stipulated value of the Premises at the critical date of confirmation, and its allowed unsecured claim at $17,773.46. In so doing, we rejected the only defense asserted by the Mortgagee, *i.e.*, that the Mortgagee was entitled to a secured claim valued by the extent of its coverage under a federally-insured mortgage program. *See In re Lopez*, 75 B.R. 961, 962–64 (Bankr.E.D.Pa.1987), *aff'd*, 82 B.R. 712 (E.D.Pa.1988) (the recovery by a mortgagee under the federal mortgage insurance is not a factor in the determination of its secured claim in a § 506 proceeding).

Commonwealth appealed our decision in the 1990 Proceeding to the United States District Court for the Eastern District of Pennsylvania ("the District Court"). However, in an Order of October 26, 1990, in C.A. No. 90–5555, our decision was affirmed. No further appeal was taken.

During the pendency of the aforementioned appeal, the Debtors, on August 21, 1990, voluntarily requested that the 1990 Case be converted to a Chapter 7 bankruptcy case. An Order converting the case was entered on August 23, 1990.

On September 27, 1990, the Mortgagee filed a motion in the 1990 Case seeking relief from the automatic stay to foreclose upon the Premises. Relief was granted without contest on October 25, 1990, which was coincidentally the day before the Order affirming our judgment in the 1990 Proceeding was entered.

An Order discharging the Debtors in the 1990 Case was entered on January 15, 1991. The 1990 Case was closed on February 16, 1991. Obviously, Commonwealth was unable to achieve foreclosure of the Premises prior to the filing of the instant case on June 4, 1991.

On July 1, 1991, the Debtors filed a Chapter 13 plan which proposed payments of $510 monthly to the Trustee for 60 months and contemplated liquidating the Mortgagee's entire allowed secured claim in the plan. On July 26, 1991, the Mortgagee filed a secured claim in this case in the amount of $44,448.56.

On September 12, 1991, the Standing Chapter 13 Trustee filed a Motion to dismiss the case because the payments were not being made, which was initially listed for a hearing on October 15, 1991. A confirmation hearing was scheduled in the case on December 3, 1991. After the filing of the instant proceeding on September 27, 1991, the Debtors, on October 8, 1991, filed a motion requesting that this court abate their plan payments for July, August, and September, 1991, and allow them to begin payments at $527 monthly for 57 months beginning in October, 1991. The Mortgagee opposed the abatement motion. The trial date of the instant proceeding was continued by agreement of the parties from November 19, 1991, to January 14, 1992. The hearings on confirmation, the Trustee's motion, and the abatement motion were ultimately continued by agreement until December 3, 1991, and then ultimately also were continued to January 14, 1992.

On December 23, 1991, the Mortgagee filed Objections to confirmation of the Debtors' Amended Plan and a motion for relief from the automatic stay. The Debtors filed a second amended plan on January 13, 1992. The motion for relief was not

listed for a hearing until January 21, 1992. Nevertheless, when the parties appeared before us on January 14, 1992, they submitted a written Stipulation of Facts which they agreed would serve as the record for all of the following pending matters:

1. The instant proceeding.

2. The Trustee's motion to dismiss the case, the responsive abatement motion, and the Mortgagee's opposition thereto.

3. Confirmation and the Objections of the Mortgagee thereto; *and*

4. The Mortgagee's motion for relief.

The Mortgagee agreed to submit a Brief addressing all of these matters by January 21, 1992, and the Debtors agreed to reply by January 31, 1992. Due to the intervening *Dewsnup* decision, the Mortgagee requested and was allowed until January 22, 1992, to remit its submission. The Debtors filed their Brief a day early, on January 30, 1992.

The Stipulation of Facts and its Exhibits, establish *inter alia,* the following:

1. The security taken by the Mortgagee includes
 any and all appliances, machinery, furniture and equipment (whether fixtures or not) of any nature whatsoever now or hereafter installed in or upon said premises, Streets, Alleys, Passages, Ways, Waters, Water Courses, Rights, Liberties, Privileges, Hereditaments and Appurtenances whatsoever thereunto belonging, or in any wise appertaining, and the Reversions and Remainders, Rents, Issues and Profits thereof: ...

7. The fair market value of the [P]remises ... is $17,500 at all relevant times.

8. [The mortgage] is insured by the United States Department of Housing and Urban Development against loss as a holder of the foregoing mortgage pursuant to Sections 203 and 204 of the National Housing Act....

9. If the property subject to the mortgage was conveyed to the Secretary of Housing and Urban Development (HUD) as a result of a mortgage foreclosure proceeding or a deed in lieu of foreclosure, then [the servicer of the mortgage] would receive · insurance benefits from HUD equal to the unpaid principal plus interest to the date of the conveyance plus the escrow deficit to the date of conveyance plus two-thirds of the mortgage foreclosure expenses....

11. Plaintiff–Debtors were unable to make the first three payments of their plan for July, August and September, 1991....

12. Plaintiff–Debtors intend to further amend their plan to provide for monthly payments of $475.23 directly to Transworld and $25.00 to the Trustee....

13. Payment of $374.23 per month for 57 months will equal the present value of $17,500 amortized at 8.5% per annum and an additional $101.00 per month represents one-twelfth of the insurance premiums and real estate taxes paid in 1991 on the mortgaged property....

15. Plaintiff–Debtors have not made the monthly mortgage payments due on the mortgage from and including October 1, 1987....

19. Plaintiff–Debtors have paid to the Trustee in this case through January 14, 1991 the sum of $2,108....

C. DISCUSSION/CONCLUSIONS OF LAW

1. THE RESULT IN THE INSTANT PROCEEDING IS CONTROLLED BY THE OUTCOME OF THE DECISION IN THE 1990 PROCEEDING UNDER THE PRINCIPLE OF *RES JUDICATA* UNLESS *DEWSNUP* AND *PERRY* COMMAND A DIFFERENT RESULT, ALTHOUGH THE ORDER GRANTING THE MORTGAGEE RELIEF FROM THE STAY IN THE 1990 CASE IS NOT *RES JUDICATA* OF THE OUTCOME OF THE SIMILAR MOTION IN THIS CASE.

The first issues which we believe must be addressed concern the impact of

*res judicata* from the decisions in the 1990 Proceeding and the 1990 Case, respectively, upon the outcome of the instant proceeding and the Mortgagee's instant motion for relief from the automatic stay.

The criteria for invocation of *res judicata* are

"(1) a final judgment on the merits in a prior suit involving (2) the same parties or their privies and (3) a subsequent suit based on the same cause of action."

*In re Laubach,* 77 B.R. 483, 485 (Bankr. E.D.Pa.1987), quoting *United States v. Athlone Industries, Inc.,* 746 F.2d 977, 983 (3d Cir.1984).

These criteria appear to all be present here. The decision in the 1990 Proceeding became final when the decision of the District Court affirming our decision was not appealed further. The same parties were involved in both proceedings. The 1990 Proceeding was, like the instant proceeding, based strictly upon 11 U.S.C. § 506(a).

The Debtors suggest that the *res judicata* effect of the 1990 Proceeding is vitiated because it arose in a prior case which was ultimately converted to Chapter 7. Thus, the 1990 Proceeding failed to have the effect that it was contemplated that it would have when it was litigated, *i.e.,* as the cornerstone of a plan in the 1990 Case. The Mortgagee argues that application of *res judicata* would impermissibly freeze the determination of value of property and the amount of a claim as of a previous, no longer relevant time-period.

The arguments of the Mortgagee might have some practical significance were it not for the following relevant facts: (1) the Debtors, as in the 1990 Proceeding, are, in this proceeding, not contesting the amount of the Mortgagee's total claim, making a change in the unsecured portion of its claim arguably proper, but irrelevant to the real issues in contest; [1] and (2) the parties

stipulated that the value of the Premises is $17,500, and hence the value of the property in question is unchanged since the adjudication of the 1990 Proceeding. Therefore, these "changes" do not form any basis to refrain from applying *res judicata,* at least as to all aspects of our prior decision except the amount of the unsecured portion of the Mortgagee's claim.

■ The fact that the 1990 Proceeding arose in another bankruptcy case would not generally affect the application of *res judicata,* especially since the parties had, at the time of the litigation of the 1990 Proceeding, interests in adjudicating the relevant issues which were the same as those which they have in the instant proceeding. *See In re Fraim, Fraim v. Citicorp Mortgage, Inc.,* Bankr. No. 91–10816S, Adv. No. 91–0276S, slip op. at 4–7, 1991 WL 114663, slip op. at *2 (Bankr.E.D.Pa. June 19, 1991). We find that the interests of the parties in the 1990 Proceeding were precisely identical to those of the same parties in the instant proceeding. The parties did not anticipate, when litigating the 1990 Proceeding, that the 1990 Case would be converted to a Chapter 7 case. Rather, they assumed, at that time that this court was establishing the parameters of the Mortgagee's secured claim for preparation of a Chapter 13 plan, precisely as they now contemplate that we are doing in determining this proceeding. We certainly do not consider the impact of *res judicata* to be limited by the observation that the 1990 Proceeding arose in a different bankruptcy case than the instant case. *Res judicata always* involves an effect that *prior* litigation, even in another forum or context, will have on present litigation.

■ It could be argued that the decision in the 1990 Proceeding rendered the instant proceeding unnecessary. Under the holding of the Court of Appeals of the Third

---

**1.** We designate this claim as only "arguably" proper because it appears that the Debtors' personal liability for the Mortgagee's unsecured claim was discharged in the 1990 Case. It could be maintained that all that remained of the Mortgagee's claim after the Debtors' discharge in that case was the Mortgagee's $17,500 secured claim as established in the 1990 Proceeding. These arguments might have won the day for the Debtors without the necessity of filing this proceeding. However, since the Debtors did not make any of the foregoing arguments, these observations stand as only an easier, alternative necessary by which the Debtors could have achieved the same result.

Circuit in *Gaglia v. First Federal Savings & Loan Ass'n,* 889 F.2d 1304 (3d Cir.1989), the 1990 Proceeding had the effect of "stripping" the Mortgagee's lien, pursuant to 11 U.S.C. 506(d), to $17,500. Since the decision in the 1990 Proceeding was not appealed beyond the District Court, even though the conversion of the 1990 Case to a Chapter 7 case preceded the District Court's decision, it could be quite convincingly argued that the decision in the 1990 Proceeding bound the parties in this case.[2]

■ The only substantial argument which this court can perceive for not holding that the 1990 Proceeding must be given full preclusive effect in the instant proceeding is the "intervening change" exception to application of *res judicata* and/or collateral estoppel. *See O'Leary v. Liberty Mutual Ins. Co.,* 923 F.2d 1062, 1067–70 (3d Cir.1991); *Clark v. Troutman,* 509 Pa. 336, 340–45, 502 A.2d 137, 139–41 (1985); and 1 RESTATEMENT (SECOND) OF JUDGMENTS, § 28, at 273–84 (1982). Pursuant to that exception, if it can be argued that the decisions in *Dewsnup* and/or *Perry* "changed" the results of *Gaglia* and *Wilson,* then *Gaglia* and *Wilson* should be denied *res judicata* effect at this time.

*O'Leary,* 923 F.2d at 1069–70, suggests that the "intervening change" exception must be applied very narrowly. The Third Circuit ultimately held, in that case, that an intervening statutory change did not permit a party to relitigate an issue arising out of the same dispute. *Id.* Rather, *O'Leary* holds that an exception to the normal preclusive effect of a court judgment arises only if the parties are litigating a completely different incident from that litigated in the earlier matter. As applied to the instant facts, this holding in *O'Leary* appears to dictate that the order in the 1990 Proceeding should bind the Mortgagee and the Debtors as long as their dispute concerned the same Premises.

In *Clark* the "intervening change" exception was not only recognized, but also applied to the facts before the court. The reasoning employed was that a contrary result would place the litigants under a different rule of law than that subsequently announced and hence applicable to all other parties. 509 Pa. at 344, 502 A.2d at 141.

We believe that the difference in approach of the two courts arises in large part because *O'Leary* was considering an intervening legislative change, while *Clark* addressed an intervening change in interpretation of existing laws by a court. Legislative changes are generally given prospective effect only; decisions of courts are generally applied retroactively, because they theoretically reflect interpretations of laws as they always should have been. *See United States v. Security Industrial Bank,* 459 U.S. 70, 79, 103 S.Ct. 407, 413, 74 L.Ed.2d 235 (1982).

The pertinent "intervening change" in the law was not legislative, but was solely an arguable change in the interpretation of unchanged law. Therefore, if *Dewsnup* and/or *Perry* overruled *Gaglia* and/or *Wilson,* it would seem that *res judicata* should not be applied to the instant matter from the 1990 Proceeding.

We have little doubt that *Dewsnup* overruled *Gaglia.* However, we must address in more detail the effect which *Dewsnup* and *Perry* had upon *Wilson* at pages 16–24 *infra.*

■ Different considerations arise in determining the *res judicata* effect of the decision in favor of the Mortgagee on its motion for relief from the automatic stay in the 1990 Case upon the similar motion of the Mortgagee in this case. The automatic stay arises whenever a bankruptcy case is filed. The effect of the stay cannot be compromised, even by the debtor, because

---

**2.** The fact that *Gaglia* was overruled by *Dewsnup* would not retroactively invalidate the decision in the 1990 Proceeding. Nor would it affect the scope of the Debtors' discharge in the 1990 Case, which, as we explained at page 946 n. 1 *supra,* would appear to discharge all of the Mortgagee's claims against the Debtors except

their $17,500 allowed secured claim in that Case. The Supreme Court has expressly held that a serial filing of a Chapter 13 case after a Chapter 7 case is permissible. *Johnson v. Home State Bank,* —— U.S. ——, 111 S.Ct. 2150, 2156, 115 L.Ed.2d 66 (1991).

it protects not only the debtor, but all parties interested in a bankruptcy proceeding. *See In re Shapiro,* 124 B.R. 974, 981 (Bankr.E.D.Pa.1991); and *In re Clark,* 69 B.R. 885, 889, *modified on other grounds,* 71 B.R. 747 (Bankr.E.D.Pa.1987). *Cf. In re Cheripka,* 1991 WL 276289, slip op. at *5—*8 (3d Cir. Dec. 31, 1991), *vacated & relisted for hearing en banc* (3d Cir., Jan. 22, 1992) (pre-filing waiver of bankruptcy discharge is invalid).

As was noted by former Chief Judge Fullam of the District Court in *In re Norris,* 39 B.R. 85, 87 (E.D.Pa.1984).

It is to be noted that there is nothing in the statutory language ... which purports to enable the Bankruptcy Court to provide relief from the automatic stay in advance of the filing of a bankruptcy petition. That is, on its face, the statute makes the stay *automatic* in all bankruptcy proceedings. In my view, a bankruptcy judge in a pending proceeding simply does not have the power to determine that the automatic stay shall not be available in subsequent bankruptcy proceedings.

*Accord In re Taylor,* 77 B.R. 237, 240 (Bankr.9th Cir.1987), *aff'd in part & rev'd in part on other grounds,* 884 F.2d 478 (9th Cir.1989).

We therefore conclude that the Order of October 25, 1990, granting the Mortgagee relief from the automatic stay has no *res judicata* effect upon the resolution of the instant, similar motion of the Mortgagee. Of course, the considerations which are relevant to this determination have no bearing on our decision regarding the *res judicata* effect of the 1990 Proceeding on the instant proceeding.

2. THIS COURT IS OBLIGED TO FOLLOW *WILSON* UNLESS AND UNTIL IT IS EXPRESSLY OVERRULED.

■ Principles of *stare decisis* command this court to follow the law of the circuit, as set forth by the Third Circuit, unless and until the Supreme Court directs to the contrary. *See Litman v. Massachusetts Mutual Life Ins. Co.,* 825 F.2d 1506, 1508 (11th Cir.1987); *Spannaus v. United States Dep't of Justice,* 824 F.2d 52, 55 (D.C.Cir.1987); and *Rodriguez v. Bowen,* 678 F.Supp. 1456, 1459 (E.D.Cal.1988). "Absent a Supreme Court decision to the contrary, district courts are compelled to follow the mandates of appellate courts." *Litman, supra,* 825 F.2d at 1508. "[U]ntil action by the Supreme Court or an *en banc* panel ... supervenes, we must adhere to the law of the circuit." *Spannaus, supra,* 824 F.2d at 55. *See also In re District 2, United Mine Workers of America v. Hinks,* 67 B.R. 883, 884–85 (Bankr.W.D.Pa. 1986) (bankruptcy court must adhere to the articulated law of the circuit even though an intervening Supreme Court decision casts doubt upon that law).

There is little doubt that the relief sought by the instant Debtors in the proceeding before us is precisely that sought by the debtors in *Wilson.* This court and the District Court, in deciding the identical 1990 Proceeding, felt little need to reference or cite to much authority other than *Wilson.* The Mortgagee argues, however, that the intervening *Dewsnup* and *Perry* decisions command a different result in this proceeding.

There is no question that we must follow *Dewsnup.* However, we also must follow the law of this circuit to the extent that it is not plainly inconsistent with *Dewsnup.* With respect to *Perry,* we note that ¶ 9.1 of the Internal Operating Procedures of the Third Circuit provides that "no subsequent panel overrules the holding in a published opinion of a previous panel."

We have little doubt that, in affirming a Tenth Circuit decision which it perceived to be in conflict with *Gaglia,* the Court, in *Dewsnup,* 112 S.Ct. at 776, 22 B.C.D. at 751, overruled *Gaglia.* However, it is far less certain that the Supreme Court meant to overrule *Wilson* as well. Similarly, in light of not only the Internal Operating Procedures quoted above, but also the favorable reference to *Wilson* in the *Perry* opinion, 945 F.2d at 66, we are strongly inclined to conclude that *Wilson* survived *Perry.* Moreover, we believe that two such recent pronouncements of the Third

Circuit should be harmonized with each other to the greatest extent possible.

Therefore, we conclude that *Wilson* continues to control the disposition of this proceeding, as it did the 1990 Proceeding, unless a pronouncement in *Dewsnup* and/or *Perry* is directly in conflict with *Wilson.* Hence, the determination of both the *res judicata* and the *stare decisis* issues before us turns upon whether *Dewsnup* or *Perry* overruled *Wilson.*

### 3. SINCE *DEWSNUP* ONLY ADDRESSED "LIEN–STRIPPING" UNDER 11 U.S.C. § 506(d) APART FROM THE TERMS OF A PLAN OF REORGANIZATION, IT DID NOT OVERRULE *WILSON.*

■ The narrow holding of *Dewsnup* is that it prevented the use of 11 U.S.C. §§ 506(a), (d), to reduce the amount of a lender's secured claim in a Chapter 7 case.

After reciting the facts and describing the positions of the parties, the *Dewsnup* majority Opinion devotes only a short passage, 112 S.Ct. at 778–79, 22 B.C.D. at 752–53, to its reasoning process. The Court begins with the following restriction of the scope of its decision to, apparently, only Chapter 7 cases:

> § 506 of the Bankruptcy Code and its relationship to other provisions of that Code do embrace some ambiguities. *See* 3 COLLIER ON BANKRUPTCY, ch. 506 and, in particular, ¶ 506.07 (15th ed. 1990). Hypothetical applications that come to mind and those advanced at oral argument illustrate the difficulty of interpreting the statute in a single opinion that would apply to all possible fact situations. *We therefore focus upon the case before us and allow other facts to await their legal resolution on another day. . . .*

112 S.Ct. at 777–78, 22 B.C.D. at 752 (emphasis added).

The Court then concludes, by reason of arguments numbered one through four which follow, that "§ 506(d) does not allow petitioners to 'strip down' " liens because Congress did not intend "to depart from the pre-Code rule that liens pass through bankruptcy unaffected." *Id.* Thus, the Court refuses to give the term "allowed secured claim" the same meaning in § 506(d) as it has in § 506(a). *Id.*

From these passages, we draw the conclusion that the Court was concerned solely with lien avoidance which extends beyond a bankruptcy case, arising by effect of the "lien avoidance" language of § 506(d). By distinguishing the scope of the term "allowed secured claim" in § 506(d) from that in § 506(a), the Court recognizes that § 506(a)'s bifurcation of secured claims within the context of the reorganization process is distinct from § 506(d)'s "stripping" of liens outside of that process. The Court does not anywhere suggest that bifurcation of liens in the context of a reorganization, either under Chapter 13 or Chapter 11 of the Code, is disapproved, or could possible be read out of § 506(a).

Examination of the four designated arguments designated by the court, 112 S.Ct. at 778–79, 22 B.C.D. at 752–53, reinforces these conclusions. The first argument expresses a concern that valuation of the secured property would be frozen pending a post-bankruptcy foreclosure of the property, thereby according a debtor a "windfall" in the event of an appreciation of value. 112 S.Ct. at 778, 22 B.C.D. at 752. The second argument references the doctrine that liens pass through bankruptcy unaffected. The third argument is a reiteration of the second, adding a reference to the establishment of that doctrine in the law interpreting the Code's predecessor Bankruptcy Act. *Id.* The final argument observes that the Court should not lightly assume that Congress intended to change the Act in enacting the Code. *Id.* at 779, 22 B.C.D. at 752–53.

■ The first two arguments reflect concerns which have no relevance to use of § 506(a) to bifurcate undersecured and totally unsecured claims within the reorganizational process. Valuation, in the context of a reorganization plan, is fixed at the time of plan confirmation, *see In re Jablonski,* 88 B.R. 652, 657 n. 5 (E.D.Pa.1988), and *In re 222 Liberty Associates,* 105 B.R. 798, 801 (Bankr.E.D.Pa.1989), while a § 506 pro-

ceeding, in a Chapter 7 case, fixes value as of the date of the bankruptcy filing. *See In re Mays,* 85 B.R. 955, 962 (Bankr. E.D.Pa.), *aff'd,* 1988 WL 81716 (E.D.Pa. 1988). An undersecured or totally unsecured claim which is liquidated in the reorganization process does not "pass through" it. Therefore, the concern that lien "pass-throughs" will be affected is not in issue when § 506(a) is utilized in the plan-confirmation process. Congress was not ambiguous in the least in stating, in § 506(a), that, in the reorganization process, allegedly secured claims can be bifurcated into "truly secured" and "truly unsecured" portions. The last argument, supporting the Court's reliance on practice and the language of the Act, raises issues of statutory interpretation with which Justice Scalia, in his dissent, takes issue. 112 S.Ct. at 780–88, 22 B.C.D. at 754–58. However, the resolution of this dispute has no relevance to the issue of the application of the Court's decision to any situations other than those involving "lien stripping" which extends beyond the reorganization process.

We therefore find that, in *Dewsnup,* the court carefully confined its holding to Chapter 7 cases or to other contexts in which liens were affected outside of the bankruptcy process. *E.g., In re Blakeney,* 126 B.R. 449, 459–61 (Bankr. E.D.Pa.1991) (fixing of total claim at request of Chapter 13 debtor who wished to cure arrearages). *Wilson,* by way of contrast, involved only the use of § 506 in the context of a reorganization plan, as it is being used by the instant Debtors. We therefore conclude that the demise of *Wilson* is far from clear, and its death certainly ought to be pronounced, if at all, by the Third Circuit and not by this court. We therefore conclude that we are bound to continue to follow *Wilson* under the pre-

cepts of *stare decisis.* We also conclude that *Dewsnup* does not constitute an "intervening change" of the law as articulated by *Wilson,* such as which would justify an exception from the application of *res judicata.* Therefore, *Dewsnup* does not affect our duty to continue to follow *Wilson* in allowing the Debtors to bifurcate the Mortgagee's claims.[3]

4. SINCE *PERRY* INVOLVES ONLY AN INTERPRETATION OF A CLAIM WITHIN THE SCOPE OF 11 U.S.C. § 1322(b)(2) UNDER NEW JERSEY LAW DISTINGUISHABLE FROM THAT OF PENNSYLVANIA, IT DOES NOT OVERRULE THE HOLDINGS OF *WILSON* UNDER PENNSYLVANIA LAW.

The Mortgagee argues vigorously that *Perry* forecloses any efforts on the part of the Debtors to pay off its claim in the plan, as opposed to curing the payment arrearages. In *Perry,* the Court of Appeals held, in the context of a claim secured only by real property 945 F.2d at 62 n. 1, that

> federal bankruptcy law does not preempt a New Jersey creditor's state law right to immediate payment of the foreclosure judgment entered as a result of a default on a home mortgage.

*Id.* at 62. Thus, the Court extended its holding, in *In re Roach,* 824 F.2d 1370, 1374–77 (3d Cir.1987), that New Jersey debtors could not, after the entry of a judgment in mortgage foreclosure against them, cure mortgage defaults, to also prevent New Jersey debtors from paying off the entire secured claim of a mortgagee under a chapter 13 plan.[4]

However, as the quotation from the parties' mortgage at page 945 *supra* clearly reveals, the Mortgagee's instant

---

**3.** The Mortgagee also raises what it terms as a "procedural objection," in insisting that a motion to determine the value of the Mortgagee's claim pursuant to Federal Rule of Bankruptcy Procedure ("F.R.B.P.") 3012 should have preceded the instant adversary proceeding. *See In re Windfelder,* 82 B.R. 367, 3769–70 (Bankr.E.D.Pa. 1988). However, we note that, in *Wilson,* no F.R.B.P. 3012 procedure was deemed a prerequisite to the relief granted. Certainly, the "lien stripping" aspect of *Dewsnup* could be avoided

by using the two-step F.R.B.P. 3012, § 506(a) process suggested in *Windfelder.*

**4.** The effect of *Perry* may be to drive non-farmer consumer debtors into Chapter 11, where § 1322(b)(2) is not a factor. *See Toibb v. Radloff,* —— U.S. ——, 111 S.Ct. 2197, 2199, 115 L.Ed.2d 145 (1991) (consumer debtors can make use of Chapter 11).

claim is *not* secured "only by a security interest in real property," as is necessary to render § 1322(b)(2) applicable. The mortgage purports to provide the mortgagee with a security interest in "all appliances, machinery, furniture and equipment (whether fixtures, or not)" located in or subsequently brought into the Premises. This is precisely the sort of security interest which the Third Circuit, in a portion of *Wilson* clearly untouched by *Perry* or *Dewsnup*, held was sufficient to take the claim in issue out of the scope of § 1322(b)(2). 895 F.2d at 128–30.

 Furthermore, the instant mortgage also purported to provide the Mortgagee with a security interest in "Reversions and Remainders, Rents, Issues and Profits thereof" from the Premises as well as the Premises itself. The rights to certain of these fruits of ownership of realty, particularly rents, do not pass to mortgagees automatically, with a mortgage. *See In re Wynnewood House Associates,* 121 B.R. 716, 723 (Bankr.E.D.Pa.1990) (a clause granting an assignment of rents, plus a demand for rentals from tenants, may grant to a mortgagee a security interest in rents paid to the mortgagor by its tenants upon default). Therefore, taking a security interest in such property as rents of the Premises, or in such other property as hazard-insurance proceeds or escrowed funds, would appear sufficient in itself to put a mortgage outside of the scope of § 1322(b)(2). *See In re Klein,* 106 B.R. 396, 400–01 (Bankr.E.D.Pa.1989); *In re Ford,* 84 B.R. 40, 42 (Bankr.E.D.Pa.1988); and *In re Caster,* 77 B.R. 8, 11–12 (Bankr. E.D.Pa.1987).

 There is absolutely no indication in *Perry* of any basis on which it could be found that the instant Mortgagee's claim fits within the scope of § 1322(b)(2). The only basis of the *Perry* holding is the limitations which it finds in § 1322(b)(2). Where such a limitation does not exist, and § 1322(b)(2) is plainly inapplicable, there is no reason to conclude that the Debtors are precluded from paying off their mortgage under the terms of their proposed plan of reorganization.[5]

Assuming *arguendo* that the mortgage in issue *was* within the scope of § 1322(b)(2), we nevertheless doubt whether *Perry* contains any adverse implications for parties situated like the Debtors. *Wilson* held that § 1322(b)(2) does not preclude a modification of the unsecured portion of a mortgagee's allegedly-secured claim under § 506(a). 895 F.2d at 125–28. As would normally always be the case, and as can be definitively established as to the *Wilson* case by reviewing the confirmed plan in that case, *see* Bankr. No. 88–12246F (Bankr.E.D.Pa. Feb. 7, 1989), the *Wilson* debtors submitted a plan contemplating payment of the entire secured portion of the mortgagee's claim within the context of the debtors' plan. *Wilson* held that such a plan was properly confirmed, irrespective of and apart from the issue of whether the mortgagee's security interest extended beyond the real property in issue. *Id.* at 125–28. The only distinction which we can perceive between this aspect of the *Wilson* decision and the discussion in *Perry,* 945 F.2d at 62–67, is that *Wilson* involves Pennsylvania debtors and *Perry* involves a New Jersey debtor.

As the *Perry* court reiterates throughout its Opinion, its result is directed by the applicable New Jersey law, which provides no rights to mortgagors after entry of a judgment in foreclosure against them. *Id.* at 62, 63, 65. On the other hand, Pennsylvania law accords mortgagees a right, even after judgment, until up to one hour before a sheriff's sale, three times annually, to "cure [a] default and prevent sale or other disposition of the real estate and avoid acceleration ..." of the indebtedness secured by a mortgage within its scope. 41 P.S. § 404(a). This law is only one aspect of Pennsylvania legislation and court precedent which "has consistently extended and interpreted this state's laws to benefit citi-

---

5. We note that *Perry* makes no reference to § 1322(b)(3), which the Third Circuit found, in *Roach, supra,* 824 F.2d at 1374–77, did not contain the restrictions set forth in § 1322(b)(2).

*See also In re Rowe,* 110 B.R. 712, 723–24 (Bankr.E.D.Pa.1990); and *Ford, supra,* 84 B.R. at 43–44 (§ 1322(b)(3) may be invoked when § 1322(b)(2) is inapplicable).

zens of the Commonwealth in efforts to retain their residences." *In re Fox,* 83 B.R. 290, 298 (Bankr.E.D.Pa.1988).

We therefore decline the invitation of the Mortgagee to conclude that, except for providing a right to cure mortgage arrears, Pennsylvania law is exactly like New Jersey law, and that the reasoning of *Perry* effectively overrules the right of a Pennsylvania mortgagor to pay off a mortgaged debt over the life of a Chapter 13 plan, as is recognized in *Wilson.* Pennsylvania mortgagors retain the right, three times annually, to save their homes from sheriff's sale if they take action to stop the sale more than one hour before the sale occurs. We recognize that the holding of *Perry* impacts severely on the rights of Pennsylvania mortgagors who are unable to halt a sheriff's sale until within an hour of its scheduled occurrence. *See In re Barrett,* 136 B.R. 387, 390 n. 1 (Bankr.E.D.Pa.1992) (*Perry* overrules *In re Rivera,* 108 B.R. 553 (Bankr.E.D.Pa.1989), which held that a mortgagor could pay off a mortgage in full under a Chapter 13 plan even when she did not halt a sheriff's sale until a time *within* one hour from its scheduled date and time of a sheriff's sale). However, we do not think the *Perry* decision impacted upon the right of Pennsylvania mortgagors to pay off their mortgages in full within a Chapter 13 plan, in light of this state's policy of aiding mortgagors able to hold a sheriff's sale of their home at least one hour prior to the sale. In any event, we consider it more appropriate for the Third Circuit to determine if it meant, in *Perry,* to retract any portion of its holdings in *Wilson* than for this court to take that step.

Therefore, we conclude that, despite the presence of the *Perry* decision, the Debtors remain entitled to pay off their mortgage in full in their Chapter 13 plan, as expressly permitted under the decision in *Wilson.*

5. THE DEBTORS SHOULD BE LIBERALLY GRANTED A RIGHT TO ABATE PRE–PETITION PLAN ARREARAGES.

At the hearing of January 14, 1992, becoming aware that no live testimony would be forthcoming, we expressed some interest in exploring whether the Debtors had met the applicable burdens upon them to allow them to abate their first three plan payments over the objection of the Mortgagee.

The term "abatement" does not appear in the Bankruptcy Code or Rules. Rather, the term appears to be one which evolved under local practice. When the Local Bankruptcy Rules of this district ("the L.B.R.") were last amended, effective July 1, 1988, the term was codified. L.B.R. 3019.1(a), (d) added provisions requiring that any request to reduce, "abate," or suspend plan payments, or offer to make a plan modification having similar effect, either before or after confirmation, must be served upon all creditors and the trustee and listed for a hearing. Since such motions typically contemplate a cure of payments within the original period of the plan, they typically draw little opposition. Consequently, little law regarding the standards for allowance of such motions, when they are opposed, has developed.

█ An abatement request is a subclass of a motion to modify or amend a plan. Accordingly, the caselaw relevant to plan amendments is the relevant body of law to which we must turn to resolve this issue.

█ In the area of plan modification, we find significant distinctions depending upon the identity of the moving party and the timing of the motion, whether pre-confirmation or post-confirmation. In *In re Gronski,* 86 B.R. 428, 431–32 (Bankr.E.D.Pa.1988), we noted that any post-confirmation motions to amend plans are restricted by the principles of *res judicata.* Thus, no post-confirmation amendments or abatements of plans are permissible unless evidence of a post-confirmation changes of circumstances is presented. *Id.*

Allowing modification of a plan at the hands of a creditor, pursuant to 11 U.S.C. § 1329(a), is a relatively new innovation, arriving with the 1984 Code amendments.

*Id.* at 431. In *Gronski,* we directed that there be a plan amendment on the motion of creditors, although we noted that the creditors were obliged to show a substantial and unanticipated change of the debtor's circumstances to succeed in such a motion. We also noted that a debtor's power to effect post-confirmation amendments or abatements "is much broader than that of a creditor." *Id.* at 432.

A debtor's right to proceed to file a pre-confirmation modification of a plan and abatement of payments is even broader. The Code, at 11 U.S.C. § 1323(a), specifically allows the debtor to "modify the plan at any time before confirmation," without qualification. 5 COLLIER ON BANK-RUPTCY, ¶ 1323.01[2], at 1323–2 to 1323.3 (15th ed. 1991), describes the procedure for pre-confirmation plan modification as follows:

> A chapter 13 plan may be modified by the debtor at anytime before confirmation, and the debtor may need to modify the plan more than once prior to confirmation. A modification may change any part of the plan. For example, it may increase or decrease any or all of the plan payments, or change the treatment of a secured creditor by surrendering collateral the debtor previously proposed to keep. One common reason for modifying a chapter 13 plan is a change in circumstances making it impossible for the debtor to carry out the terms of the original, or prior, plan. Thus, a plan may have to be modified to permit the debtor to cure a postpetition arrearage in mortgage payments or in payments to the trustee or some other default on the prior plan. ...

> . . . . .

The procedure for modifying a chapter 13 plan prior to confirmation is quite simple. The debtor may simply file the modified plan with the clerk. Notice of the modification must be given, at least, to any creditors adversely affected by the modification and proof of such notice should be filed with the clerk. Bankruptcy Rule 2002(a)(6) requires twenty days written notice of the time to accept or reject a proposed modification of a plan. In some bankruptcy courts there are local rules of procedure specifying who should receive notice of plan modifications (footnotes omitted).

This court has been liberal in allowing debtors to cure at least modest post-petition defaults. *See Ford, supra,* 84 B.R. at 44; and *In re Nickleberry,* 76 B.R. 413, 416 (Bankr.E.D.Pa.1987). The passages from Collier suggest that some courts are even more liberal, allowing debtors to modify plans, even when payments are "abated" therein, without any notice or hearing or opportunity to object to creditors.

In this milieu, allowing the Debtors to abate three payments and cure these defaults by making larger payments which will allow the plan payments to be completed within the original time-frame of a plan seems quite reasonable. *Compare In re Cobb,* 122 B.R. 22, 26–27 (Bankr.E.D.Pa. 1990) (the debtor's failure to commence payments due to a failure to timely file a plan will not be tolerated; the length of a plan is limited to 60 months from when payments should commence).

Although the Debtors' bald allegation of an "inability to pay," without an explanation of extraordinary circumstances, especially in the context of their past failure to maintain plan payments, is so vague as to justify denial of a motion to abate in some contexts, we cannot overlook the fact that, here, the Debtors have commenced and apparently resumed payments for a considerable time. Such weak allegations and the failure to make a factual record in the face of opposition would doubtless justify denial of a post-confirmation abatement motion. However, given the extremely low threshold which the Debtors must clear to allow the instant, pre-confirmation motion to abate a modest number of payments, we will grant the instant motion.

## 6. CONFIRMATION OF THE DEBTORS' PLAN APPEARS APPROPRIATE.

It appears to us that all of the Mortgagee's objections to confirmation have either been addressed and rejected or may be

summarily denied. The objection to the extension of the plan beyond three years is met by the observation that we previously granted the Debtors' application, filed in accordance with good practice and unopposed after five days' notice to all creditors, to extend the plan period to not more than five years. *See In re Capodanno,* 94 B.R. 62, 66–78 (Bankr.E.D.Pa.1988). No evidence of an alleged 11 U.S.C. § 1325(b)(1)(B) objection was voiced or argued. *See In re Fricker,* 116 B.R. 431, 437–48 (Bankr.E.D.Pa.1990) (objecting party has the burden of establishing that, on its face, such an objection is not frivolous nor unfounded).

■■■■■ The plan will pay the Mortgagee's allowed secured claim in full and therefore adequately protects the Mortgagee's security interest in the Premises. The Debtors, as discussed herein, may use 11 U.S.C. § 506(a) and Chapter 13 to reduce the Mortgagee's secured claim, irrespective of the amount of the Mortgagee's mortgage-insurance recovery. The fact that prior bankruptcies were filed by the Debtors does not preclude confirmation of the instant plan. *See Johnson v. Home State Bank, supra,* 111 S.Ct. at 2156 (serial filings not categorically prohibited, but are barred only where the Code expressly so provides). The default in payments will be cured by our granting the abatement motion.

Nevertheless, we are uncertain whether the Trustee is prepared to immediately recommend confirmation of the Debtors' second amended plan. The Debtors may also wish to make certain further amendments to their plan in light of the contents of this Opinion. We will give them about one week (until February 20, 1992) to do so, and then, after giving creditors one last opportunity for filing objections, we will list this case for a final confirmation hearing.

7. THE MORTGAGEE'S MOTION FOR RELIEF FROM THE AUTOMATIC STAY MUST BE DENIED.

■■■ Finally, with respect to the Mortgagee's motion for relief from the automat-

ic stay, we find that our conclusion that confirmation of the Debtors' plan is imminent eliminates the Mortgagee's possibility of proving that the Premises is "not necessary for an effective reorganization," as required by 11 U.S.C. § 362(d)(2)(B). Both prongs of §§ 362(d)(2), *i.e.,* (A) and (B), must be satisfied to allow relief under that Code provision.

■■■ The confirmability of the Debtors' plan also provides the requisite adequate protection to the Mortgagee's interests required under 11 U.S.C. § 362(d)(1). *See In re Franklin Pembroke Venture II,* 105 B.R. 276, 278 (Bankr.E.D.Pa.1989); *In re Mitchell,* 75 B.R. 593, 599–600 (Bankr. E.D.Pa.1987); and *In re Crompton,* 73 B.R. 800, 809–12 (Bankr.E.D.Pa.1987). Since the Mortgagee cannot succeed in its motion for relief from the automatic stay under either 11 U.S.C. §§ 362(d)(1) or (d)(2), this motion must be denied.

D. CONCLUSION

Appropriate Orders relating to all of the matters before us, consistent with the conclusions reached in this Opinion, will be entered.

ORDER

AND NOW, this 12th day of February, 1992, upon consideration of the Stipulation of Facts filed by the parties on January 14, 1992, which they agreed would constitute the consolidated record on the Debtors' motion to abate and modify their Plan ("the Abatement Motion"); the motion of Commonwealth Mortgage Corp. of America ("Commonwealth") for relief from the automatic stay ("the Stay Relief Motion"); the Objections of Commonwealth to confirmation of the Debtors' Second amended Chapter 13 Plan of reorganization ("the Objections"); and the above-captioned adversary proceeding, and upon careful review of the Briefs of the parties relevant thereto, it is hereby ORDERED AND DECREED as follows:

1. Judgment is entered in favor of the Debtors and against Commonwealth in the proceeding. The claim of Commonwealth

is bifurcated into a secured claim of $17,500 and an unsecured claim of $26,948.56 pursuant to 11 U.S.C. § 506(a).

2. The Abatement Motion is GRANTED. The Debtors are authorized to file their proposed Second Amended Plan or any other plan which excludes payments for July, August, and September, 1991, as long as these payments are made up within the requisite 60–month plan period.

3. The Objections of Commonwealth to the proposed Amended Plan are OVERRULED.

4. The Stay Relief Motion is DENIED.

5. Any Amended Plan to be filed by the Debtors in light of this Opinion and Order shall be filed and served upon all of the Debtors' priority and secured creditors or their counsel, the Trustee, and the court in chambers on or before February 20, 1992.

6. Any Objections to any Amended Plan filed by the Debtors shall be filed and served upon the Debtors' counsel, the Trustee, and the court in chambers on or before March 2, 1992.

7. A final re-scheduled hearing to consider confirmation of the Debtors' Plan or any further Amended Plan and the Trustee's Motion to Dismiss shall be conducted on

THURSDAY, MARCH 5, 1992, at 9:30 A.M. and shall be held in Courtroom No. 2 (Room 3718), United States Court House, 601 Market Street, Philadelphia, PA 19106.

8. In light of the substantial continuances of the confirmation hearing in this case, no further continuances of the dates set forth in this order will be favored. If the Debtors cannot or do not accomplish confirmation of a plan on March 5, 1992, this case may be dismissed.