**In re Daniel Joseph GALLAGHER, Debtor.**

**No. 03–31732DWS.**

United States Bankruptcy Court, E.D. Pennsylvania.

Oct. 21, 2005.

David A. Scholl, Law Office of David A. Scholl, Newtown Square, PA, for Debtor.

William C. Miller, Philadelphia, PA, pro se.

## MEMORANDUM OPINION

DIANE WEISS SIGMUND, Chief Judge.

Before the Court are the Motions of the Debtor (1) to Amend Confirmed Chapter 13 Plan Post–Confirmation ("Plan Motion") and (2) for Permission to Obtain Credit ("Financing Motion"). A hearing was held on the Plan Motion on September 15, 2005, and the record was subsequently consolidated with the record made on September 29, 2005 on the Financing Motion. The Chapter 13 trustee (the "Trustee") and Old Gold LLC ("Old Gold") object to both Motions.

## BACKGROUND

On August 5, 2003 Daniel Gallagher filed a petition under Chapter 13.[1] He quickly filed an adversary proceeding against Old Gold to challenge the extent of the lien it held on all his properties.[2] Old Gold responded with a motion for relief which some six months later was resolved with a consent order whereby Debtor agreed to sell the Pub, one of his properties, to partially satisfy Old Gold's claim.

The Chapter 13 plan Debtor filed at the inception of his case to which Old Gold

---

**1.** I shall take judicial notice of the docket entries in this case. Fed.R.Evid. 201, incorporated in these proceedings by Fed.R.Bankr.P. 9017. *See Maritime Elec. Co., Inc. v. United Jersey Bank,* 959 F.2d 1194, 1200 n. 3 (3d Cir.1991); *Levine v. Egidi,* 1993 WL 69146, at *2 (N.D.Ill.1993); *In re Paolino,* 1991 WL 284107, at *12 n. 19 (Bankr.E.D.Pa.1991); *see generally In re Indian Palms Associates, Ltd.,* 61 F.3d 197 (3d Cir.1995). Moreover, factual assertions in pleadings, which have not been superceded by amended pleadings, are judicial admissions against the party that made them. *Larson v. Groos Bank,* 204 B.R. 500, 502 (W.D.Tex.1996) (statements in schedules). *See also In re Musgrove,* 187 B.R. 808 (Bankr.N.D.Ga.1995) (same); *In re Leonard,* 151 B.R. 639 (Bankr.N.D.N.Y.1992) (same).

**2.** Old Gold held or holds a lien on 2341 South 4th Street, Philadelphia (the "Pub"), 1401–1403 Moyamensing Avenue, Philadelphia (the "Moyamensing Property"), Debtor's residence at 128 Mercy Street, Philadelphia (the "Residence") and a triplex. Old Gold also held or holds a lien on two liquor licenses owned by corporate entities controlled by Gallagher.

objected was amended for the first time on March 24, 2004. The amendment provided for the sale of the Pub and subsequent financing to renovate the Moyamensing Property and pay off the balance to Old Gold. Old Gold maintained its objection. A second amended plan was filed on May 12, 2004 which contemplated a sale of the Moyamensing Property to the Mooney family, the buyer of the Pub, the proceeds of which would fund renovations of the Moyamensing Property (in anticipation of a buy back) and satisfy Old Gold's claim. A third amended plan filed on July 6, 2004 contained the same terms regarding the Moyamensing Property but reduced the monthly payments to the Trustee from $750 to $500. Debtor claimed he could not accomplish the second Mooney transaction or any refinance of the Moyamensing Property without knowing the amount of Old Gold's claim. Accordingly, he was given liberal extensions of scheduled hearings on plan confirmation and the pending Trustee's motion to dismiss (for lack of plan feasibility) to allow for the liquidation of Old Gold's claim. On September 9, 2004 I held an evidentiary hearing on the claims objection and established a post-hearing briefing schedule.

On December 7, 2004 while the claim objection was under advisement, a fourth amended plan was filed. Doc. No. 120. For the first time, Debtor committed to accomplish the contemplated payment of Old Gold by a date certain. In the fourth plan, he proposed to pay off Old Gold through either a refinancing of the Moyamensing Property and/or his other properties or through the Mooney transaction

described above within 180 days of the determination of Old Gold's claim.[3] On December 22, 2004 I entered an Order and Opinion which determined the amount of the Old Gold claim.[4]

With the claim amount determined, a fifth amended plan was filed on February 18, 2005 in which Debtor committed to pay off Old Gold and all other amounts due under the plan by the sale of the Moyamensing Property or before August 31, 2005, "or possibly some other arrangement by which Old Gold will be paid its allowed secured claim in full on or before that date. If no other arrangement can be made, the Restaurant (*i.e.*, Moyamensing Property) will be sold by that date or this case will be dismissed." Doc. No. 152. The Fifth Amended Plan provided that no further monthly payments would be made to the Trustee but rather the plan would be paid off in full by a lump sum payment from the sale proceeds. Old Gold objected to confirmation of this plan. Prior to confirmation, the Debtor filed yet another plan. Doc. No. 164. The Sixth Amended Plan dated April 15, 2005 reiterated the provision to pay off Old Gold and the other amounts due under the plan by August 31, 2005 or the case would be dismissed but provided that monthly payments of $500 would resume until the lump sum payment was made on or before August 31, 2005. The Sixth Plan was confirmed on May 12, 2005. Doc. No. 167.

On August 15, 2005 the Plan Motion accompanied by the Seventh Amended Plan was filed. In the Plan Motion the Debtor avers that he has fallen slightly

---

3. The fourth plan further reduced the monthly Trustee payment from $500 to $482.

4. Although I decided all the legal issues in dispute, I was unable to place a final number on the claim based on the record made. A stipulation was filed on February 4, 2005 by the parties quantifying my opinion. Old Gold

has appealed this decision insofar as it denied them attorneys' fees as part of its allowed secured claim. Debtor, having the necessary underlying information, knew as of December 22, 2004 the amount of the claim he would have to satisfy.

behind in plan payments and has been unable to finalize a sale of the Moyamensing Property. He claims that "he has prospects for a sale or of an arrangement with investors who would put up funds to liquidate the claim of Old Gold LLC but he will need additional time to do so." He requests a postponement of the drop dead date until December 31, 2005. The filed Seventh Plan, Exhibit D–1, simply copies the Sixth Plan substituting December 31, 2005 for August 31, 2005.

At the hearing on the Plan Motion, the Debtor had another proposal, perhaps anticipating that the ambiguity of the Seventh Plan, i.e., prospects for a sale or an arrangement with investors to pay off Old Gold, would not pass muster over Old Gold's expected objection given the Debtor's self-executing agreement to dismiss if the plan was not fully funded by August 31, 2005. The Debtor now testified that while he still had some sale prospects, he had secured a "commitment" from Nova Savings Bank ("Nova") to extend a $170,000 mortgage loan on the Residence. Exhibit D–2.[5] Authorization of this loan is the relief sought by the Financing Motion. With the proceeds of the Nova loan, he intends to pay off Old Gold and the other creditor dealt with by the plan, his former

wife Maryellen who is to be paid in full her non-dischargeable support obligation.

As that hearing and the subsequent hearing on the Financing Motion made apparent, there are not sufficient proceeds from the Nova loan to pay Old Gold[6] and the other plan obligations. Acknowledging the truth of the latter, Debtor vaguely states, as he has stated repeatedly before, that he intends to deal with Old Gold and then have a proposal to satisfy the rest of the plan funding. As for the Nova loan, he testified he did not know what it would take to close or when it would close.[7] However, once it did and Old Gold was paid, the Debtor believes he will be able to get additional financing on his other properties to pay the balance of the plan obligations.

As noted, the Trustee and Old Gold object to both Motions, albeit for different reasons. Old Gold simply has heard the Debtor's vague and optimistic proposals too many times before and wants to move forward to exercise its state law remedies. It contends that the confirmed plan had an enforceable deadline which having not been met requires dismissal of the case by its own express terms. The Trustee is more charitable, focusing on the defects in the Seventh Plan which notably proposes

5. Indeed the letter was not a commitment because the Debtor did not deposit the $2,550 non-refundable fee preferring to see if he would be allowed the additional time he sought by the Court before laying out any money. Perhaps realizing that hedging on this issue undermined his position, Debtor paid the commitment fee before the Financing Motion was heard.

6. Indeed Old Gold contends that the net loan proceeds would not even pay its claim in full so as to discharge its liens on the Debtor's other properties. In response to that contention, Debtor states if the loan is not enough, "he can get more money." On the merits, Old Gold elicited that it is owed $150,000, the existing mortgage is $12,000 and there are

approximately $10,000 of unpaid real estate taxes or $172,000 of liens to be discharged with $170,000 of loan proceeds. Debtor claims he can reduce the taxes and thus the total charges to be paid out of the loan proceeds to $168,000. Notably he did not explain how he could service the new loan which requires current payments of $1,400 when he is struggling to make his $500 Trustee payments.

7. It appears that the refinancing was initiated in mid-August when it was apparent no sale would be accomplished by the plan completion date. Debtor authorized his accountant to seek a loan on his Residence, and the Nova letter was produced.

to pay all creditors by December 31, 2005. As the Trustee correctly observes, the financing at best satisfies Old Gold and adds a large new expense to the budget. There is no apparent source of funding for the remainder of the plan notwithstanding the provision that states that it will be paid off by December 31, 2005. The Trustee also notes that the Debtor has been in this Chapter 13 case for two years and confirmation hearings have been scheduled and rescheduled 14–15 times. While his plan has always been speculative, he was allowed the time to make it work. It did not.

The Debtor contends that section 1329(a) of the Bankruptcy Code provides for the liberal modification of confirmed Chapter 13 plans which is all he seeks to do. Questioning whether a plan default could simply be remedied by a plan amendment changing the term of the plan in default, I directed Debtor's counsel to provide me with authority for his position that plan modification was permissible in this situation.[8] Having reviewed that document and considered the factual record, the Plan Motion and the Financing Motion shall be denied. Moreover, since I am not permitting the filing of a further Chapter 13 plan and the current confirmed plan provides that the case will be dismissed if the Moyamensing Property is not sold or some other arrangement made to pay Old Gold in full by August 31, 2005, this case will be dismissed.

## DISCUSSION

Section 1329(a) provides that prior to completion of payments under the plan, the debtor may request a modification of the plan to increase or decrease the amount of payments, or extend or reduce the time for payments. 11 U.S.C. § 1329(a)(1) and (2). The courts have articulated various approaches to the adjudication of such requests. Reading the statute literally, the liberal view is that a modification should be allowed so long as the proposed modified plan satisfies the requirements of § 1322(a) (mandatory plan provisions [9]), § 1323(b) (optional plan requirements [10]), § 1323(c) (modification before confirmation), and § 1325(a) (confirmation requirements, including that of good faith, best interests of creditors and ability to pay). In essence, if the proposed modified plan could have been confirmed if submitted as the original plan, then modification would be permitted. While changed circumstances may be relevant to one of the statutory requirements, they are not a threshold condition to modification under these cases. Other courts do impose a changed circumstances requirement. They reason that the *res judicata* effect of the confirmation order provided by § 1327 precludes a right to modify absent unanticipated changed financial circumstances. *Compare In re Jourdan*, 108 B.R. 1020 (Bankr.N.D.Iowa 1989) (cause for modification to reduce payment not required) *with In re Guernsey*, 189 B.R. 477 (Bankr.

8. A common variant of this situation occurs when the trustee files a motion to dismiss for failure to make plan payments which is defended, not by payment, but by the filing of an amended plan "to abate." Abatement simply rolls the plan arrears into the plan and increases the monthly payments. Absent some extraordinary circumstances (illness, an unexpected expense such as funeral costs), this type of plan modification will not be approved over objection. Thus, Debtor's counsel's

analogy to this practice to support the modification proposed here is unconvincing.

9. The submission of all disposable income, the full payment of all priority debt and non-discriminatory classification of claims remain mandatory provisions upon modification.

10. This section describes how secured and unsecured creditors as well as executory contracts may be treated under the plan.

D.Minn.1995) (debtors must show adverse change in financial circumstances to obtain approval of plan modification that reduces confirmed plan payments over the objection of affected creditor). *See also* 189 B.R. at 480–81 and n. 6 (summarizing different views and citing cases).

While the Third Circuit Court of Appeals has not spoken on this issue, Debtor embraces *Barbosa v. Soloman*, 235 F.3d 31 (1st Cir.2000) for the proposition that a debtor may modify plans liberally " 'on a proper showing of changed circumstances.' " *Id.* at 39 n. 11 (*quoting In re Moseley*, 74 B.R. 791, 799 (Bankr.N.D.Cal. 1987)). Debtor also quotes *Moseley* to state that " '[n]o particular burdensome proof is required for a debtor to show 'changed circumstances.' " 74 B.R. at 799 n. 13. Thus, it would appear that Debtor concedes that there is no absolute right to modify but rather a showing of changed circumstances is required, albeit not a significant change. This view is further supported by the Debtor's indirect acknowledgment of *In re Gronski*, 86 B.R. 428 (Bankr.E.D.Pa.1988).[11] While *Gronski* involved a modification sought by a creditor, its dicta that the debtor's powers of modification are broader than that of a creditor acknowledges that "the *res judicata* impact of § 1327(a) is, at least to some degree, a two-way street." 86 B.R. at 428.

Finding that the Debtor's proposed modified plan neither meets the minimum statutory requirements for modification or evidences any changed circumstance, I need not articulate the quantum of change necessary to support a post-confirmation modification opposed by the affected creditor. The Seventh Amended Plan requires all plan payments to be made by December 31, 2005 or the case will be dismissed. By his own testimony, Debtor has only secured funding to pay Old Gold. Assuming, without deciding that the financing will fully pay off Old Gold, the Debtor still has no concrete plan to pay off the rest of the plan. He states that he does not know how long it will take to close the new loan and that until he does so and pays off Old Gold, he cannot address the second stage of his plan funding. Moreover, there is no evidence that he will be able to pay the $1,400 additional monthly debt service on the new Nova loan.[12] Rather his testimony that he now works as a longshoreman capable of making the larger payments is as speculative as his assurance that he can timely find additional financing for the balance of the plan payments.

This Court has heard Debtor's assurances about potential sales and refinancing before. Giving Debtor the benefit of the doubt, his Sixth Amended Plan was confirmed on just those kind of representations. Debtor first proposed a sale of the Moyamensing Property in May 2004. He then contended he could only accomplish that end within six months of liquidation of the Old Gold claim. While the Debtor knew the amount of the claim in December 2004, his confirmed plan gave him until August 31, 2005 to complete the sale. Debtor was allowed all the time he sought to sell the Moyamensing Property. Without any offers, he let the time expire with-

---

**11.** The Debtor cites to *In re Taras*, 136 B.R. 941 (Bankr.E.D.Pa.1992). Debtor's Memorandum of Law in Support of Amend Motion at 6. *Taras* involved a pre-confirmation modification and therefore stands on different footing than the post-confirmation modification sought here. *Taras*, however, refers to *Gronski*, a decision which arises like *Taras* from a case administered by Debtor's counsel when he served as a bankruptcy judge in this district.

**12.** His present mortgage payment is $500, and his present plan purports to pay all his disposable income to the Trustee. There has been no amended Schedule I.

out a back up plan. Only when the self executing dismissal provision of his plan was to be triggered did he seek to get some financing. His testimony that he could not secure financing because of Old Gold is simply not credible since Old Gold's position today is no different than it was in March 2004 when the Pub was sold and Old Gold was paid in part. In short, the Seventh Amended Plan is speculative. The deadline is arbitrary and insincere. The Seventh Amended Plan does not meet the requirement of § 1325(a)(5) that the debtor will be able to make all payments under the plan and to comply with the plan, and thus § 1329(b) which requires compliance with § 1325(a), precludes modification.

Moreover, the Debtor has not demonstrated any change in circumstances. He is in default of his confirmed plan because he was unable to perform the commitment he made. He represented that he would sell the property by August 31, 2005 or he would abandon this bankruptcy. He was unable to perform as required and offered no reason, no unforeseen circumstance that impeded his effort. He just wants more time—again. As Debtor has offered no unanticipated change in circumstance for his failure to perform his confirmed plan, there is simply no basis not to accord his plan the finality contemplated when the order of confirmation was entered.[13]

Because I will not allow further modification of the confirmed plan and because the plan contemplates dismissal if Old Gold and the other creditors are not paid by August 31, 2005, I will dismiss the Chapter 13 case and deny the Financing Motion as moot.[14] If Debtor is serious about his intention to pay off Old Gold, he can proceed with his financing out of bankruptcy and accomplish that end. Debtor does not need this Chapter 13 case other than to stay Old Gold from foreclosure. Since foreclosure cannot occur before the time it would take to complete the proposed Nova loan, Debtor is not prejudiced from my refusal to accept his modification. This case has essentially been a two-party dispute. Since the Debtor's sole focus is on Old Gold and no provision has been made for other creditors, the case in reality has no Chapter 13 purpose.

An Order consistent with the foregoing Memorandum Opinion shall be entered.

### ORDER

**AND NOW**, this 21st day of October 2005, upon consideration of the Motions of the Debtor (1) to Amend Confirmed Chapter 13 Plan Post–Confirmation ("Plan Motion") and (2) for Permission to Obtain Credit ("Financing Motion"), after notice and hearing and for the reasons stated in the accompanying Memorandum Opinion;

It is hereby **ORDERED** that:

13. In *In re Mader*, 108 B.R. 643 (N.D.Ill. 1989), a Chapter 12 case, the bankruptcy court had rejected a proposed modification to provide relief from a plan provision that required conversion thirty days after a plan payment default reasoning that no modification of a "drop dead clause" could ever be allowed. The district court disagreed stating that it was the reason for the default, not the fact of default, that would determine whether modification would be permitted and remanded for further proceedings. *Contra In re Grogg Farms, Inc.*, 91 B.R. 482 (Bankr.N.D.Ind. 1988) (because confirmed plan specifically provided for relief in event of default, no modification which would circumvent the provided for remedy in the "drop dead" clause would be allowed). I need not speculate on what change of circumstance would allow a debtor to modify a plan that has a "drop dead" clause so as to obtain relief from its implementation since there is no change in this case.

14. I would deny it on the merits as well as the Debtor has not established that he can make the payments required.

1. The Plan Motion is **DENIED**.

2. The Financing Motion is **DENIED** as Moot.

3. The Chapter 13 case is **Dismissed**. The Clerk shall close this case in ten (10) days.