**In re 3 RAM, INC., Debtor.**

**No. 06–10656DWS.**

United States Bankruptcy Court,
E.D. Pennsylvania.

May 9, 2006.

---

David A. Scholl, Law Office of David A. Scholl, Newtown Square, PA, for Debtor.

*OPINION*

DIANE WEISS SIGMUND, Chief Judge.

Before the Court is the (1) Motion to Dismiss Case With Prejudice (the "Old Gold Motion") filed by Old Gold, LLC ("Old Gold") and (2) Debtor's Motion to Approve Disclosure Statement (the "Debtor's Motion") (together the "Motions"). A hearing was held during which neither party presented any testimony.[1] For the reasons set forth below, Old Gold's Motion shall be granted, and Debtor's Motion shall be denied as moot.

## BACKGROUND

3 Ram, Inc. ("Ram") is a non-operating corporation whose sole function is to own a liquor license which was intended to be utilized by its sole shareholder Daniel Joseph Gallagher ("Gallagher") in connection with a restaurant and bar to be built on property he owns. The bankruptcy background for these Motions begins in August 5, 2003 when Gallagher filed his first Chapter 13 case in response to enforcement actions being taken by Old Gold which holds a lien on all Gallagher's properties to secure his guarantee of a loan made to Ram and Danny Gallagher's Pub, Inc. (the "Pub"), another corporation owned by Gallagher. In that case, Gallagher objected to Old Gold's proof of claim, and I fixed his liability at $138,775.89 plus interest from February 1, 2005 at $41.10 per day. Doc. No. 179, Order dated July 13, 2005 (the "July Claim Order").[2] Staying Old Gold's foreclosure efforts by his own filing, Gallagher soon found it necessary to file a petition for Ram in order to

---

1. In support of its position, Old Gold relied on the Old Gold Motion papers which refer to this Court's findings in the related cases of Daniel Joseph Gallagher, no. 03–31732, and 3 Ram Inc., 04–31434, and the objection to the 3Ram Disclosure Statement to which is attached certain pleadings and the docket in state court proceedings against Ram. There was no objection to this record. Moreover, I am free to take judicial notice of the docket entries as well as the opinions rendered and orders entered in the multiple Gallagher and Ram bankruptcy cases. Fed.R.Evid. 201, incorporated in these proceedings by Fed. R.Bankr.P. 9017. *See Maritime Elec. Co., Inc. v. United Jersey Bank*, 959 F.2d 1194, 1200 n. 3 (3d Cir.1991); *Levine v. Egidi*, 1993 WL 69146, at *2 (N.D.Ill.1993); *In re Paolino*, 1991 WL 284107, at *12 n. 19 (Bankr.E.D.Pa. 1991); *see generally In re Indian Palms Associates, Ltd.*, 61 F.3d 197 (3d Cir.1995).

2. This amount is net of a lump sum payment of $212,000 made to Old Gold on or about June 24, 2004 and is based on a Stipulation dated February 4, 2005 which sought to preserve certain issues, including Old Gold's express condition that it did not determine rights against Ram. Doc. No. 145. Old Gold has appealed the July Claim Order insofar as I rejected its claim for post-petition attorneys' fees.

Gallagher/Ram counsel has contended that Ram is bound by the amount set forth in the July Claim Order. Not only did Old Gold expressly reserve that issue, I have never been asked to adjudicate Old Gold's claim against Ram as maker of the note (versus Gallagher as guarantor) and express no opinion as to whether the claims are identical, as Ram contends, or different, as Old Gold argues.

protect the liquor license from being seized by Old Gold to satisfy its judgment.[3]

The first Ram Chapter 11 petition was filed on August 23, 2004. Ram's only significant creditor was Old Gold,[4] which Ram and Gallagher proposed to pay pursuant to Gallagher's Chapter 13 plan which committed to sell Gallagher's property at 1401–05 Moyamensing Ave., Philadelphia, PA (the "Moyamensing Property"). Ram took the view that all obligations would be dealt with in the Gallagher Chapter 13 plan and did not pursue a reorganization plan in its Chapter 11 case. On April 8, 2005 the United States Trustee ("UST") filed a motion to dismiss or convert the Ram Chapter 11 case to one under Chapter 7 ("UST Motion") averring that notwithstanding seven months under the protection of the bankruptcy court, Ram had failed to file a plan of reorganization, remain current in the filing of operating reports and pay UST fees, all of which evidenced the absence of a reasonable likelihood of rehabilitation and constituted delay prejudicial to creditors. Ram urged the Court to defer hearing the UST Motion until the Gallagher case was consummated. Since the Gallagher case was to be the vehicle for treating Old Gold's claim, Ram saw no reason to have to comply with the requirements of a Chapter 11 case. Doc. No. 26, Debtor's Answer to UST Motion. The UST and I thought otherwise and the case was dismissed on June 6, 2005. In re 3 Ram, Inc., No. 04–31434 (Doc. No. 32).[5]

Not only was the pendency of the Gallagher case not a substitute for compliance with the requirements of Chapter 11 by Ram, but the Gallagher Chapter 13 case, which was allegedly the source of Old Gold's payment, ultimately failed as well. Promising through one plan after another to sell the Moyamensing Property or secure financing to pay Old Gold, Gallagher found himself in default of his confirmed sixth amended plan on August 31, 2005 when neither had occurred. His attempt to propose a seventh plan moving the agreed sale or refinancing date to December 31, 2005 [6] was opposed by the Chapter 13 trustee and Old Gold. In an Opinion and Order dated October 21, 2005, *In re Gallagher*, 332 B.R. 277 (Bankr.E.D.Pa.2005) (the "October Ruling"), I found that Gallagher had promised to make payment by August 31 or suffer dismissal of his case and that he had established no unanticipated change of circumstances that would relieve him of this contractual commitment of his confirmed plan. Moreover, based on Gallagher's testimony, I found the new promise to perform by December 31, 2005 speculative, a finding that has been proven

---

3. On August 17, 2004, Old Gold secured a judgment by confession against Ram and the Pub, in the amount of $217,269.03. Rather than seek to open that judgment, Ram filed its first Chapter 11 petition when Old Gold sought to execute on the liquor license.

4. Ram also acknowledged the claims of the Pennsylvania Department of Revenue which it intended to pay, along with Old Gold, when Gallagher's property was sold.

5. Seeking to minimize the significance of the prior failed case, Debtor's counsel states that the case was only dismissed because the Debtor believed that he did not need the Chapter 11 case any longer as Old Gold could be satisfactorily dealt with in the Gallagher case. While Gallagher may not have actively contested the dismissal for that reason, there is no evidence that Gallagher withdrew his answer and my ruling although not containing findings, was based on my concurrence with the UST's position.

6. At that time Gallagher also sought authorization to obtain a loan from Nova Bank but as I concluded that the proceeds would be insufficient to pay all creditors in full as his plan provided and there was no other available realistic source to make up the difference, the financing motion was never approved.

to have been correct as the Moyamensing Property has not been sold nor has Gallagher obtained financing from Nova Bank as of April 10, 2006 when the hearing on these Motions was held. Accordingly, the Gallagher Chapter 13 case was dismissed.[7] Moreover, I noted that the bankruptcy proceeding was essentially a two party dispute and that if Gallagher was serious about his intention to pay Old Gold, he could proceed with his financing out of bankruptcy and accomplish that end.

This latest bankruptcy case was filed because Old Gold was again seeking to execute on its judgment against Ram. Ram's "plan of reorganization" is a familiar one: Gallagher shall obtain a loan from Nova Bank and pay off all claims against Ram and Gallagher. However, the loan commitment that Gallagher has from Nova Bank, by Ram's own admission, is insufficient to fund the entire Old Gold claim. As noted above, Ram seeks to hold Old Gold to the liquidated amount of the Gallagher claim whereas Old Gold seeks satis-

faction of its larger judgment against Ram.[8] In its Disclosure Statement, Ram states that Gallagher obtained an offer from Nova Bank in August 2005 for a loan of $170,000 on his residence which it believes could pay off Old Gold except that Old Gold disagrees with the amount that Ram states it is owed.[9] Ram further states that Gallagher has not taken the loan because Old Gold refuses to provide a payoff statement which is consistent with the liquidation of its claim against Gallagher. Finally, Ram promises to consummate the plan "90 days after the Old Gold claim is fixed." Notably Ram has taken no steps to have the claim amount fixed although this case has been pending for over two months and the Old Gold Motion seeking dismissal for almost as long.[10]

Both the UST and Old Gold objected to the Ram Disclosure Statement. Ram then filed an Amended Disclosure Statement contending that it had addressed all the UST's comments but had not responded to Old Gold's objections.[11] Upon review of

7. The October Ruling is on appeal to the district court but the request for a stay was denied.

8. *See* note 2 *supra*.

9. The UST points out that the Disclosure Statement provides no details about this loan so the Court and parties in interest have no way of evaluating its sufficiency to pay claims. Concluding that this is the same $170,000 Nova Bank loan that was the subject of the hearing in the Gallagher case, I note that I found there that the available financing must be reduced by approximately $22,000 representing the existing mortgage on the Gallagher residence and unpaid real estate taxes which would generate net proceeds of $148,000. Based thereon, I concluded that the proposed loan would not pay existing liens on the property and a secured claim of Old Gold in the amount of $150,000. I also found that Gallagher had not proven that he could service a loan with monthly payments of $1,440 when he was struggling to make a

$500 Chapter 13 trustee payment. October Ruling, 332 B.R. at 280 and n. 6. As Ram provided no evidence in the instant matter to support its opposition to the Dismissal Motion, there is no evidence to controvert these prior findings.

10. Old Gold has not filed a proof of claim although Ram has not asked that a bar date be fixed. Rather Ram filed a claim on behalf of Old Gold in the amount of $147,500. If it is based on the Gallagher allowed claim, that number is understated since $138,775.89 plus interest at a per diem of $41.10 yields an obligation of $156,282.49 as of March 31, 2006 (increasing to $157,515.49 as of April 30, 2006). At the hearing, Ram's counsel appeared to accept this recalculation.

11. Ram's counsel stated that since they related to how he described the parties' disputes and only a few creditors would read the document, he did not think it necessary to make those changes even if they misstated the facts as Old Gold argued.

the Amended Disclosure Statement, it does not appear that Ram has cured all of the UST's objections, especially with respect to the amount and contingencies of the contemplated Nova loan. Old Gold not only objected to the Ram disclosure statement as containing misstatements about the history of the parties' relationship but because it was filed in furtherance of an unconfirmable plan.

On these facts, Old Gold urges dismissal because the case presents essentially a two party dispute which does not belong in the bankruptcy court.[12] It contends that there is no plan that can be confirmed and no estate to be administered. Like the prior failed Chapter 11 case, it states that there is nothing to reorganize and as such, the case was not filed in good faith. The UST agrees that the Ram case is a two party dispute and notes that Ram does not state otherwise. He observes that Ram appears to be involving this court in another claims allowance process. Moreover, because the Disclosure Statement contains insufficient information, it is totally speculative whether a feasible plan could be confirmed.

## DISCUSSION

■ As this case was filed after the enactment of the Bankruptcy Abuse Prevention and Consumer Protection Act ("BAPCPA"), amended § 1112 applies to the Old Gold Motion. Absent unusual circumstances that establish that conversion or dismissal is not in the best interests of creditors and the estate, on request of a party in interest, the court *shall* convert or dismiss if the movant establishes "cause." 11 U.S.C. § 1112(b)(1). While the enumerated examples of "cause" to convert or dismiss a chapter 11 case now listed in § 1112(b)(4) have changed under BAPCPA, the fact that they are illustrative, not exhaustive has not.[13] In re *TCR of Denver, LLC,* 338 B.R. 494, 500 (Bankr.D.Col. 2006). *See also* 7 Collier on Bankruptcy § 1112.01[2][a] at 1112–8–1112–9 (15th ed. rev.2005). The statute has retained the prefatory language "includes" in setting forth its illustrations of "cause," and the amendment has not altered the rule of construction of "includes" as not limiting. 11 U.S.C. § 102(3).

■ While no longer an enumerated ground under amended § 1112,[14] conver-

12. On April 11, 2006, I entered an Order rejecting Gallagher's motion that I "enforce" my July Claim Order or stay the execution proceedings pending in the state court against Gallagher. While I held that I had no jurisdiction to rule as my Order was on appeal, I nonetheless noted that the proper forum for a challenge to Old Gold's execution was in the state court where it was pending. In a status conference held on May 4, 2006, I was advised that Gallagher has returned to the state court which has stayed the May 2 execution proceeding pending briefing of legal issues.

13. As stated by Congress when it drafted the original § 1112(b):

Subsection (b) gives wide discretion to the court to make an appropriate disposition of the case when a party in interest requests. The court is permitted to convert a reorganization case to a liquidation case or to

dismiss the case, whichever is in the best interests of the creditors and the estate, only for cause.... The list [of ten grounds that constitute cause set forth in § 1112(b)] is not exhaustive. The court will be able to consider other factors as they arise, and to use its equitable powers to reach an appropriate result in individual cases.

H.R.Rep. No. 595, 95th Cong., 1 st Sess. 405–06 (1977), U.S.Code Cong. & Admin.News 1978, pp. 5963, 6361–62. *See also Official Committee of Unsecured Debtors v. Nucor Corp. (In re SGL Carbon Corp.),* 200 F.3d 154, 160 (3d Cir.1999) (finding that bad faith was cause for dismissal or conversion under § 1112 even though not included in the ten grounds).

14. Old § 1112(b)(2) identified "inability to effectuate a plan" as an illustration of cause. I note that this ground is no longer expressly stated. Old § 1112(b)(1) "continuing loss or

sion or dismissal of a Chapter 11 bankruptcy case is appropriate where the court finds that the proposed plan is not feasible and that a feasible plan is not possible. *Fossum v. Federal Land Bank (In re Fossum)*, 764 F.2d 520, 521 (8th Cir.1985). *See also Michigan National Bank v. Charfoos (In re Charfoos)*, 979 F.2d 390, 395 (6th Cir.1992) *(quoting Toibb v. Radloff*, 501 U.S. 157, 111 S.Ct. 2197, 115 L.Ed.2d 145 (1991)) ("it is recognized that generally 'bankruptcy courts [have] substantial discretion to dismiss ... [where] the debtor files an untenable plan of reorganization.' "); *In re Brown*, 951 F.2d 564, 572 (3d Cir.1991) *(quoting United Sav. Assoc. v. Timbers of Inwood Forest, Ltd.*, 484 U.S. 365, 108 S.Ct. 626, 98 L.Ed.2d 740 (1988)) (discussing § 1112(b) and stating that "there must be 'a reasonable possibility of a successful reorganization within a reasonable time.' "); *In re Anderson*, 52 B.R. 159, 162–63 (Bankr.D.N.D.1985) (failure of the debtor to meet the confirmation prerequisite of 11 U.S.C. § 1129(a)(11) is cause for dismissal under § 1112(b)). If the Chapter 11 case cannot achieve a reorganization within the statutory requirements of the Code, then there is no point in expending estate assets on administrative expenses, or delaying creditors in the exercise of their nonbankruptcy law rights. *In re Brown*, 951 F.2d at 572. *See also In*

*re L.B.G. Properties*, 72 B.R. 65, 68 (Bankr.S.D.Fla.1987) (Chapter 11 does not provide an unlimited opportunity to seek a successful reorganization). Although this case is only pending for several months, it follows on the heels of the prior case filed almost two years ago.

■ Ram wants to maintain this Chapter 11 case (and its concomitant automatic stay) in order to confirm a 100% plan that would be funded from the refinance of the Debtor's residence. While it focused its defense to the Old Gold Motion on Old Gold's refusal to accept the amount of the claim as allowed against Gallagher, it has done nothing in two bankruptcy cases to liquidate that claim. Indeed as of today and even though Ram's counsel has been making this argument for some time, the question of how much Ram owes Old Gold has not been presented to this or any court. Nor does the Disclosure Statement give any indication of when and how that adjudication is to occur. Rather it states that Gallagher still has "the opportunity to obtain the Nova Bank loan" and then simply proposes that creditors will be paid 90 days after the claim is fixed.[15] Surprisingly given the seriousness of the Old Gold Motion and the decreased discretion on the part of the court under new § 1112, Ram produced no evidence in support of its

---

diminution of the estate and absence of a reasonable likelihood of rehabilitation" is carried into the new statute as § 1112(b)(4)(A) and will likely be applicable in most situations where the reorganization is futile. However, where the debtor is not an operating company as here but merely holds an intangible asset, the loss or diminution prong of § 1112(b)(4)(A) is not relevant and the old § 1112(b)(2) remains the applicable grounds for cause. I can discover no explanation for the elimination of § 1112(b)(2) or (b)(3) ("delay that is prejudicial to creditors"). However, as the bankruptcy bill provision amending § 1112 is titled *"Expanded* Grounds for Dismissal or Conversion and Appointment of Trustee," HR Rep. No. 31, 109th Cong., 1 st

Sess.442 (2005) (emphasis added), and as the amended provision limits the court's discretion to refuse to dismiss or convert upon a finding of cause seemingly to lower the barrier to dismissal, it is unlikely that cause found under the prior case law based on grounds either not enumerated (*e.g.,* bad faith) or no longer enumerated (*e.g.,* inability to effectuate a plan) will not be cause under BAPCPA. Neither party has expressed a view on the amendment to § 1112.

15. Query if the Nova loan is still available and the only reason it has not been accessed is that the Old Gold claim has not been fixed, why it would take another 90 days to pay creditors once the claim is allowed.

reorganization. As I have already held in the October Ruling that the Nova financing would be insufficient to pay the Gallagher claims, one would have thought Ram would have taken the opportunity to demonstrate that if it could get an adjudication that the Ram claim was equivalent to the Gallagher claim, i.e., $157,000, the plan could be confirmed. However, no such minimal showing was made. Thus, Ram has failed to establish that even assuming it prevails on the claim issue that it presumably wishes to litigate, it would be successful in this case.[16] This is without regard to Old Gold's contention that it is entitled to much more from Ram.

Because I conclude that a confirmable plan is not possible in this case [17] and that there is no reorganization in progress but rather that a two party dispute persists which is not and need not be addressed in the bankruptcy forum, I find "cause" to dismiss this case. Since Ram has only one asset which is fully encumbered, there is no estate for a Chapter 7 trustee to administer. Thus, dismissal as opposed to conversion is indicated. Under new § 1112 when cause is found, the court *shall* dismiss or convert unless special circumstances exist that establish that the requested conversion or dismissal is not in the best interests of creditors and the estate. 11 U.S.C. § 1112(b)(1). Except for the partially secured claim of the Department of Revenue, the movant Old Gold which seeks dismissal is the only creditor in this case. I find no unusual circumstances that suggest dismissal is not in the best interests of the other creditor and the estate. Moreover, for the reasons discussed above, it follows that the debtor has not established that a plan can be confirmed at all, let alone within the deadlines of § 1121(e) and 1129(e) or within a reasonable time when those deadlines do not apply. 11 U.S.C. § 1112(b)(2).

For the foregoing reasons, this Chapter 11 case shall be dismissed. Accordingly, the Disclosure Statement Motion is moot. As I stated in the October Ruling, all is not lost as Ram can presumably address its liability to Old Gold in the same state court forum that is presently challenging the execution on the Gallagher claim. However, it will no longer enjoy the protection of the automatic stay of § 362 which is intended only to serve a valid bankruptcy purpose.

An Order consistent with the foregoing Opinion shall be entered.

### ORDER

**AND NOW,** this 9th day of May 2006, upon consideration of the (1) Motion to

---

**16.** *See* note 10 *supra*. Ram has two creditors, Old Gold and the Department of Revenue with a secured claim of $3,45 8 and a priority claim of $3,427.44. Under the proposed plan, these claims are to be paid in full. I had previously found that the $170,000 loan was insufficient to satisfy all liens on the property being refinanced and Old Gold's claim of $150,000. Given the passage of time, the Old Gold claim is now $157,000 and the tax claim must be paid from the proceeds. Thus, the shortfall has increased by almost $14,000.

**17.** Ram appears to believe that its plan is confirmable because under its view of the case, creditors are not impaired. The UST was not impressed with this argument nor am

I. Old Gold's claim in this case is secured by Ram's only asset, the liquor license, which it values on its schedules at $50,000. The balance of its claim is unsecured although the entire claim is classified as secured. Even with this recharacterization of Old Gold's claim against Ram, payment 90 days after confirmation alters Old Gold's legal, equitable and contractual rights. 11 U.S.C. § 1124. Old Gold not unexpectedly has stated that it will reject the plan, and thus Ram will have to cram down Old Gold's claim. 11 U.S.C. § 1129(b)(2)(A). As neither party has addressed whether this is possible, neither will I. Suffice it to say that the plan is simply not feasible. 11 U.S.C. § 1129(a)(11).

Dismiss Case With Prejudice (the "Old Gold Motion") filed by Old Gold, LLC ("Old Gold") and (2) Debtor's Motion to Approve Disclosure Statement (the "Debtor's Motion") (together the "Motions"), after notice and hearing and for the reasons stated in the accompanying Opinion;

It is hereby **ORDERED** that:

1. Old Gold's Motion is **GRANTED.**

The Debtor's Motion shall be **DENIED** as moot.